JOHN W. HUBER, United States Attorney (#7226)
LESLIE A. GOEMAAT, Special Assistant United States Attorney (MA #676695)
RICHARD M. ROLWING, Special Assistant United States Attorney (OH #0062368)
ARTHUR J. EWENCZYK, Special Assistant United States Attorney (NY #5263785)
JOHN E. SULLIVAN, Senior Litigation Counsel, Tax Division (WI #1018849)
Attorneys for the United States of America
111 South Main Street, #1800
Salt Lake City, Utah 84111
Telephone: (801) 524-5682
Email: leslie.a.goemaat@usdoj.gov
        richard.m.rolwing@usdoj.gov
        arthur.j.ewenczyk@usdoj.gov
        john.e.sullivan@usdoj.gov

FILED
U.S. DISTRICT COURT

2018 AUG -1 2:12:40

DISTRICT OF UTAH

BY:_____
    DEPUTY CLERK

**SEALED**

# IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF UTAH, CENTRAL DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | Case No. **18MJ02255** |
| Plaintiff, | : | INDICTMENT |
| v. | : | Viols. |
| JACOB ORTELL KINGSTON, ISAIAH ELDEN KINGSTON, and LEV ASLAN DERMEN, a/k/a Levon Termendzhyan, | : | **Counts 1 thru 9** – 26 U.S.C. § 7206(2) (Aiding and Assisting in the Filing of a False Return) |
| | : | |
| Defendants. | : | **Counts 10 thru 14** – 18 U.S.C. §§ 1956(a)(1)(B)(i) and 2 (Money Laundering) |
| | : | **Count 15** – 18 U.S.C. §§ 1957 and 2 (Money Laundering) |
| | : | Forfeiture Allegation |

The Grand Jury charges:

At times relevant to this Indictment:

Case: 2:18-cr-00365
Assigned To : Parrish Jill N.
Assign. Date : 8/1/2018
Description: USA v. SEALED

1

## Defendants and Their Companies

1.      Defendant JACOB ORTELL KINGSTON was a resident of Utah and owned 50% of Washakie Renewable Energy, LLC ("Washakie").  He was the chief executive officer of Washakie.

2.      Defendant ISAIAH ELDEN KINGSTON was a resident of Utah and owned 50% of Washakie.  He was the chief financial officer of Washakie.

3.      Washakie was a limited liability company with corporate offices in Salt Lake City, Utah.  As of January 7, 2013, Washakie described itself on its website as "Utah's largest producer of clean burning and sustainable biodiesel."  As of November 10, 2013, Washakie described itself on its website as "the largest producer of biodiesel and chemicals in the intermountain west."

4.      United Fuel Supply ("UFS") was a limited liability company with corporate offices in Salt Lake City, Utah.  UFS was controlled by Defendants JACOB ORTELL KINGSTON and ISAIAH ELDEN KINGSTON.

5.      Defendant LEV ASLAN DERMEN, a/k/a Levon Termendzhyan, was a resident of California.  He controlled several fuel-related companies in the United States, including Noil Energy Group, a corporation with offices in California.

6.      SBK Holdings, Inc., later SBK Holdings USA, Inc., was a corporation formed in California in December 2013 initially owned by Defendants JACOB ORTELL KINGSTON and LEV ASLAN DERMEN, a/k/a Levon Termendzhyan.  Defendant DERMEN had signatory authority over SBK Holdings USA, Inc.'s bank accounts and

2

became the sole owner of the entity in or around September 2014.

7.    The Internal Revenue Service ("IRS") was an agency of the United States Department of Treasury responsible for administering and enforcing the tax laws of the United States.

## Law and Industry

8.    The IRS administered tax credits designed to increase the amount of renewable fuel used and produced in the United States.  The tax credits were refundable regardless of whether the taxpayer owed other taxes, and were paid by U.S. Treasury check.

9.    Biodiesel was a type of renewable fuel derived from plant or animal matter that met certain IRS and Environmental Protection Agency ("EPA") standards.  Agri-biodiesel was a type of biodiesel.  Biodiesel was referred to as "B100" in the fuel industry if it was not mixed with diesel fuel.  Renewable diesel was another type of renewable fuel, derived from biomass, that met certain IRS and EPA standards. Renewable diesel was referred to as "R100" in the fuel industry if it was not mixed with diesel fuel.  "Feedstock" was a generic term for raw material used to produce various kinds of renewable fuel.

10.    Biodiesel mixture was produced by blending B100 with at least .1% of diesel fuel.  After blending, the mixture of B100 and diesel was referred to "B99" in the fuel industry.  The biodiesel mixture credit was a refundable fuel tax credit available to blenders of biodiesel mixture who used the mixture as a fuel or sold it for use as a fuel.

The amount of the credit was $1.00 for every gallon of B100 that was used to produce the biodiesel mixture. The market value of B100 was higher than the market value of B99 because the $1.00 per gallon biodiesel mixture credit could be obtained by blending the B100 with diesel fuel.

11.     Renewable diesel mixture was produced by blending R100 with at least .1% of diesel fuel. After blending, the mixture of R100 and diesel was referred to as "R99" in the fuel industry. The renewable diesel mixture credit was a refundable fuel tax credit available to blenders of renewable diesel mixture who used the mixture as a fuel or sold it for use as a fuel. The amount of the credit was $1.00 for every gallon of R100 that was used to produce the renewable diesel mixture. The market value of R100 was higher than the market value of R99 because the $1.00 per gallon renewable diesel mixture credit could be obtained by blending the R100 with diesel fuel.

12.     Liquid fuel derived from biomass was a type of alternative fuel that did not meet the IRS and EPA requirements for biodiesel or renewable diesel.

a.     The alternative fuel mixture credit was a $.50 per gallon refundable fuel tax credit available to registered producers of alternative fuel mixtures who used the mixture as fuel in the producer's trade or business or sold it for use as fuel. It was no longer refundable after December 31, 2011.

b.     The alternative fuel credit was a $.50 per gallon refundable fuel tax credit available to registered alternative fuelers who sold for use, or used, alternative fuel as a fuel in a motor vehicle or motorboat.

4

13.     IRS Form 8849, Claim for Refund of Excise Taxes, was used to claim fuel tax credits for biodiesel mixtures, agri-biodiesel mixtures, renewable diesel mixtures, and liquid fuel derived from biomass.

### Mail Fraud Scheme Allegations

14.     From in or around at least as early as 2010 through 2016, JACOB ORTELL KINGSTON and ISAIAH ELDEN KINGSTON schemed with each other and others, including LEV ASLAN DERMEN, a/k/a Levon Termendzhyan, to have Washakie and UFS file false claims with the United States to fraudulently obtain refundable fuel tax credits and other government benefits.

15.     As part of their scheme, among other things, JACOB ORTELL KINGSTON and ISAIAH ELDEN KINGSTON, and others, including LEV ASLAN DERMEN, a/k/a Levon Termendzhyan, did the following:

a.     They bought and resold, and caused others to buy and resell on their behalf, B99 and other products that were not eligible for a refundable fuel tax credit.

b.     They falsified and caused others to falsify purchase invoices and contracts.

c.     They falsified and caused others to falsify production records, blending tickets, bills of lading, and other paperwork routinely created in qualifying renewable fuel transactions.

d.     They falsified and caused others to falsify sales invoices.

e.     They falsified and caused others to falsify accounting records.

f.    They involved numerous companies in their transactions.

g.    They falsified paperwork to disguise purchases of B99 as B100 or feedstock.

h.    They falsified paperwork to disguise other products as qualifying liquid fuel.

i.    They rotated, or moved, and caused others to move, liquid products between various places in the United States and elsewhere, including Panama, to make it falsely appear that transactions involving the purchase and sale of feedstock, B100, B99, and other fuel products, were taking place.

j.    They used "burner phones," facsimile machines, thumb drives, and other covert means to communicate among themselves and with others in the scheme.

k.    They filed and caused to be filed false Forms 8849 with the IRS, falsely claiming the $1.00 per gallon credit for biodiesel mixtures, agri-biodiesel mixtures, and renewable diesel mixtures.

l.    They filed and caused to be filed false Forms 8849 with the IRS, falsely claiming the $.50 per gallon credit for liquid fuel derived from biomass.

m.    By filing these false Forms 8849, they caused the U.S. Treasury to pay more than $511 million to Washakie by sending, via the mails, U.S. Treasury checks to Washakie's offices in Salt Lake City, Utah.

16.    JACOB ORTELL KINGSTON and ISAIAH ELDEN KINGSTON, with each other and others known and unknown to the grand jury, including LEV ASLAN

DERMEN, a/k/a Levon Termendzhyan, knowingly devised and intending to devise a scheme and artifice to defraud the United States, and to obtain money and property from the United States by materially false and fraudulent pretenses, representations, and promises, as described in paragraphs 14 and 15, that is, by, among other things, scheming to fraudulently obtain U.S. Treasury checks through the filing of Forms 8849, Claims for Refund of Excise Taxes, with the IRS for and on behalf of Washakie and UFS, which forms falsely claimed refundable fuel tax credits that Washakie and UFS were not entitled to receive, and, for the purpose of executing said scheme and artifice to defraud, did cause mailings and things to be sent via the United States Postal Service and private and commercial interstate carriers, including, but not limited to, U.S. Treasury checks mailed on or about the following dates in the following amounts:

| Para. Num. | Date | False Item(s) Claimed on Form 8849 | Treasury Check Amount |
|---|---|---|---|
| A. | 02/17/11 | Agri-biodiesel mixtures and liquid fuel derived from biomass | $3,174,387 |
| B. | 04/01/11 | Agri-biodiesel mixtures | $1,905,114 |
| C. | 04/05/11 | Liquid fuel derived from biomass | $3,654,952 |
| D. | 04/25/11 | Liquid fuel derived from biomass | $486,000 |
| E. | 05/23/11 | Biodiesel mixtures and liquid fuel derived from biomass | $1,755,693 |
| F. | 05/26/11 | Biodiesel mixtures | $1,984,000 |
| G. | 06/29/11 | Biodiesel mixtures | $1,142,891 |
| H. | 07/19/11 | Liquid fuel derived from biomass | $840,000 |
| I. | 08/03/11 | Biodiesel mixtures and liquid fuel derived from biomass | $3,500,000 |
| J. | 09/20/11 | Biodiesel mixtures | $2,500,000 |

| Para. Num. | Date | False Item(s) Claimed on Form 8849 | Treasury Check Amount |
|---|---|---|---|
| K. | 10/19/11 | Renewable diesel mixtures | $1,000,000 |
| L. | 10/24/11 | Biodiesel mixtures | $2,000,000 |
| M. | 10/24/11 | Biodiesel mixtures and renewable diesel mixtures | $4,250,000 |
| N. | 10/28/11 | Biodiesel mixtures | $2,000,000 |
| O. | 11/03/11 | Renewable diesel mixtures | $522,970 |
| P. | 11/10/11 | Biodiesel mixtures | $723,000 |
| Q. | 11/18/11 | Renewable diesel mixtures | $1,495,250 |
| R. | 12/28/11 | Renewable diesel mixtures and liquid fuel derived from biomass | $2,785,648 |
| S. | 01/31/12 | Liquid fuel derived from biomass | $1,350,808 |
| T. | 02/28/13 | Biodiesel mixtures | $3,901,235 |
| U. | 03/19/13 | Biodiesel mixtures | $640,959 |
| V. | 03/20/13 | Liquid fuel derived from biomass | $20,283,659 |
| W. | 03/21/13 | Biodiesel mixtures and liquid fuel derived from biomass | $4,406,041 |
| X. | 04/05/13 | Biodiesel mixtures and liquid fuel derived from biomass | $8,859,520 |
| Y. | 05/21/13 | Liquid fuel derived from biomass | $11,872,884 |
| Z. | 05/31/13 | Biodiesel mixtures | $11,700,000 |
| AA. | 06/13/13 | Biodiesel mixtures | $11,400,000 |
| BB. | 08/07/13 | Agri-biodiesel mixtures | $25,800,000 |
| CC. | 08/22/13 | Biodiesel mixtures | $16,200,000 |
| DD. | 09/09/13 | Biodiesel mixtures | $35,008,437 |
| EE. | 10/18/13 | Biodiesel mixtures | $33,465,236 |
| FF. | 11/05/13 | Biodiesel mixtures | $33,581,899 |
| GG. | 11/27/13 | Biodiesel mixtures | $38,078,529 |
| HH. | 12/19/13 | Biodiesel mixtures | $33,578,660 |
| II. | 01/10/14 | Biodiesel mixtures | $21,789,321 |

| Para. Num. | Date | False Item(s) Claimed on Form 8849 | Treasury Check Amount |
|---|---|---|---|
| JJ. | 03/12/15 | Biodiesel mixtures | $82,102,840 |
| KK. | 03/12/15 | Biodiesel mixtures | $82,102,840 |

17.   The scheme described in paragraphs 14 through 16 is hereinafter referred to as the "Mail Fraud Scheme."

## Statutory Allegations

### Counts 1 thru 9
### 26 U.S.C. § 7206(2)
### (Willfully Aiding and Assisting in the Filing of a False Return)

18.   Paragraphs 1 through 13 are incorporated by reference and re-alleged as though fully set forth herein.

19.   On or about the dates set forth below, in the Central Division of the District of Utah and elsewhere,

### JACOB ORTELL KINGSTON,

defendant herein, did willfully aid and assist in, and procure, counsel, and advise the presentation to the IRS of the following Forms 8849, Claims For Refund of Excise Taxes, for and on behalf of Washakie, which were false and fraudulent as to the material matters referenced in the chart below, in that the Forms 8849 falsely represented that Washakie was entitled to claim refundable fuel tax credits in the amounts set forth below, whereas, as Defendant JACOB ORTELL KINGSTON then and there knew, Washakie was not entitled to the credits in the amounts claimed:

9

| Count | Defendant | Date | False Item(s) Claimed | Amount of Credit Claimed |
|-------|-----------|------|-----------------------|---------------------------|
| 1 | JACOB KINGSTON | 02/13/13 | Line 2a – Biodiesel mixtures | $3,901,235 |
| 2 | JACOB KINGSTON | 02/25/13 | Line 2a – Biodiesel mixtures | $640,959 |
| 3 | JACOB KINGSTON | 03/11/13 | Line 3f – Liquid fuel derived from biomass | $20,283,659 |
| 4 | JACOB KINGSTON | 03/12/13 | (a) Line 2a – Biodiesel mixtures (b) Line 3f – Liquid fuel derived from biomass | $806,041 $3,600,000 |
| 5 | JACOB KINGSTON | 03/27/13 | (a) Line 2a – Biodiesel mixtures (b) Line 3f – Liquid fuel derived from biomass | $2,398,274 $6,461,246 |
| 6 | JACOB KINGSTON | 04/17/13 | Line 3f – Liquid fuel derived from biomass | $11,872,884 |
| 7 | JACOB KINGSTON | 05/20/13 | Line 2a – Biodiesel mixtures | $11,700,000 |
| 8 | JACOB KINGSTON | 06/03/13 | Line 2a – Biodiesel mixtures | $11,400,000 |
| 9 | JACOB KINGSTON | 07/29/13 | Line 2b – Agri-biodiesel mixtures | $25,800,000 |

All in violation of Title 26, United States Code, Section 7206(2).

### Counts 10 thru 12
### (Money Laundering)
### 18 U.S.C. § 1956(a)(1)(B)(i)

20.     Paragraphs 1 through 17 are incorporated by reference and re-alleged as though fully set forth herein.

### $11.2 Million Loan to Borrower X

21.     In June 2013, Defendants JACOB ORTELL KINGSTON and LEV ASLAN DERMEN, a/k/a Levon Termendzhyan, used proceeds of the Mail Fraud Scheme to make an $11.2 million loan to Borrower X, a California businessman, as follows:

a.     On or about June 10, 2013, Defendant JACOB ORTELL KINGSTON caused funds representing fraud proceeds, that is, a U.S. Treasury check in the amount of $11,700,000, to be deposited into Washakie account #4874;

b.     On or about June 17, 2013, Defendant JACOB ORTELL KINGSTON caused funds representing fraud proceeds, that is, a U.S. Treasury check in the amount of $11,400,000, to be deposited into Washakie account #4874;

c.     On or about June 21, 2013, Defendants JACOB ORTELL KINGSTON and LEV ASLAN DERMEN, a/k/a Levon Termendzhyan, caused a wire transfer in the amount of $11,226,211 to be sent from Washakie account #4874 to a third party account in Florida for the purpose of making a loan to Borrower X of that amount;

d.     On or about February 4, 2015, Defendant LEV ASLAN DERMEN, a/k/a Levon Termendzhyan, executed, and caused Borrower X to execute, a promissory

note for $12,000,000 to document the loan to Borrower X, which made the loan payable

to SBK Holdings USA, Inc. instead of to Washakie, the source of the loan.  Borrower X

made principal and interest payments on this loan to accounts controlled or directed by

Defendant DERMEN; and

    e.  As a result of the foregoing, Defendants JACOB ORTELL

KINGSTON and LEV ASLAN DERMEN, a/k/a Levon Termendzhyan, disguised the

criminally derived proceeds fraudulently obtained from the United States as payments

related to a loan payable to SBK Holdings USA, Inc.

**Statutory Allegations**

  22.  On or about the dates set forth in the table below, in the Central Division of

the District of Utah and elsewhere,

**JACOB ORTELL KINGSTON and
LEV ASLAN DERMEN,
a/k/a Levon Termendzhyan,**

defendants herein, did knowingly and willfully conduct and attempt to conduct financial

transactions affecting interstate commerce, that is, causing the making of principal and

interest payments on the $11,226,211 loan made to Borrower X, which transactions

involved the proceeds of specified unlawful activity, that is, the proceeds of the Mail

Fraud Scheme, in violation of Title 18, United States Code, Section 1341, knowing that

the transactions were designed in whole or in part to conceal and disguise the nature,

location, source, ownership, and control of the proceeds of said specified unlawful

activity, and that while conducting or attempting to conduct such transactions, knew that

12

the property involved in the transactions represented the proceeds of some form of

unlawful activity, with each of the following financial transactions constituting a separate

count:

| Count | Defendants | Date | Financial Transaction |
|---|---|---|---|
| 10 | JACOB KINGSTON LEV DERMEN | 02/20/15 | $210,000 wire transfer for the benefit of SBK Holdings USA, Inc., representing an interest payment on Borrower X's loan |
| 11 | JACOB KINGSTON LEV DERMEN | 03/16/15 | $70,000 wire transfer for the benefit of SBK Holdings USA, Inc., representing an interest payment on Borrower X's loan |
| 12 | JACOB KINGSTON LEV DERMEN | 4/15/15 | $70,000 wire transfer for the benefit of SBK Holdings USA, Inc., representing an interest payment on Borrower X's loan |

All in violation of Title 18, United States Code, Sections 1956(a)(1)(B)(i) and 2.

**Counts 13 and 14**
**(Money Laundering)**
**18 U.S.C. § 1956(a)(1)(B)(i)**

23.    Paragraphs 1 through 17 are incorporated by reference and re-alleged as

though fully set forth herein.

**Purchase of Real Property at 2072 East Creek Road**

24.    In August 2013, Defendants JACOB ORTELL KINGSTON, ISAIAH

ELDEN KINGSTON, and LEV ASLAN DERMEN, a/k/a Levon Termendzhyan, used

proceeds of the Mail Fraud Scheme to purchase the real property at 2072 East Creek

Road, Sandy, Utah 84093, as follows:

a.    On or about April 8, 2013, Defendant JACOB ORTELL

13

KINGSTON caused funds representing fraud proceeds; that is, a U.S. Treasury check in the amount of $8,859,520, to be deposited into Washakie account #4874 at the Bank of Utah;

      b.    On or about May 24, 2013, Defendant JACOB ORTELL KINGSTON caused funds representing fraud proceeds, that is, a U.S. Treasury check in the amount of $11,872,884, to be deposited into Washakie account #4874 at the Bank of Utah;

      c.    On or about May 28, 2013, Defendant JACOB ORTELL KINGSTON caused $15 million to be transferred from Washakie account #4874 to Merrill Lynch account #2117;.

      d.    On or about June 5, 2013, Defendant JACOB ORTELL KINGSTON issued and signed a $3 million check payable to Noil Energy Group from loan account #1352 at Merrill Lynch, which account was secured by account #4821 at Merrill Lynch;

      e.    On or about June 7, 2013, Defendant JACOB ORTELL KINGSTON caused $15,000,123 to be transferred from Merrill Lynch #2117 to Defendant JACOB ORTELL KINGSTON's personal account #4821 at Merrill Lynch;

      f.    On or about June 10, 2013, Defendant LEV ASLAN DERMEN, a/k/a Levon Termendzhyan, caused a $3 million check from JACOB ORTELL KINGSTON's Merrill Lynch account #1352 to be deposited into Noil Energy Group account #8583 at Bank of America;

      g.    On or about June 10, 2013, Defendant JACOB ORTELL

KINGSTON caused funds representing fraud proceeds, that is, a U.S. Treasury check in the amount of $11,700,000, to be deposited into Washakie account #4874;

h.    On or about June 13, 2013, Defendant JACOB ORTELL KINGSTON caused $10 million to be transferred from Washakie account #4874 to Defendant JACOB ORTELL KINGSTON's personal account #4821 at Merrill Lynch;

i.    On or about June 17, 2013, Defendant JACOB ORTELL KINGSTON caused funds representing fraud proceeds, that is, a U.S. Treasury check in the amount of $11,400,000, to be deposited into Washakie account #4874;

j.    On or about July 3, 2013, Defendant JACOB ORTELL KINGSTON used $3,024,393 of funds from his personal account #4821 at Merrill Lynch to pay off the outstanding balance on his loan account #1352 at Merrill Lynch;

k.    On or about July 29, 2013, Defendant JACOB ORTELL KINGSTON signed a purchase contract listing "Noil Energy" as the buyer of the real property at 2072 East Creek Road, Sandy, Utah 84093;

l.    On or about August 1, 2013, Defendants JACOB ORTELL KINGSTON and ISAIAH ELDEN KINGSTON caused Washakie to wire transfer $50,000 from Washakie account #4874 to Meridian Title Company for the purchase of the real property at 2072 East Creek Road, Sandy, Utah 84093;

m.    On or about August 2, 2013, Defendants JACOB ORTELL KINGSTON and ISAIAH ELDEN KINGSTON caused Washakie to wire transfer $675,034 from Washakie account #4874 to Meridian Title Company for the purchase of

15

the real property at 2072 East Creek Road, Sandy, Utah 84093; and

       n.     On or about August 5, 2013, Defendants JACOB ORTELL

KINGSTON and LEV ASLAN DERMAN, a/k/a Levon Termendzhyan, caused

$3,160,000 to be wire transferred from Noil Energy Group account #8583 to Meridian

Title Company for the purchase of the real property at 2072 East Creek Road, Sandy,

Utah 84093.

### Statutory Allegations

       25.    On or about the following dates, in the Central Division of the District of

Utah and elsewhere, defendants set forth in the table below, did knowingly and willfully

conduct and attempt to conduct financial transactions affecting interstate commerce, that

is, causing funds to be wire transferred in connection with the purchase of the real

property at 2072 East Creek Road, Sandy, Utah 84093, which transactions involved the

proceeds of specified unlawful activity, that is, the proceeds of the Mail Fraud Scheme, in

violation of Title 18, United States Code, Section 1341, knowing that the transactions

were designed in whole or in part to conceal and disguise the nature, location, source,

ownership, and control of the proceeds of said specified unlawful activity, and that while

conducting or attempting to conduct such transactions, knew that the property involved in

the transactions represented the proceeds of some form of unlawful activity, with each of

the following financial transactions constituting a separate count:

| Count | Defendant | Date | Financial Transaction |
|-------|-----------|------|----------------------|
| 13 | JACOB KINGSTON ISAIAH KINGSTON | 08/02/13 | $675,034 wire transfer from Washakie to Meridian Title Company in connection with the purchase of the real property at 2072 East Creek Road |
| 14 | JACOB KINGSTON LEV DERMEN | 08/05/13 | $3,160,000 wire transfer from Noil Energy Group to Meridian Title Company in connection with the purchase of the real property at 2072 East Creek Road |

All in violation of Title 18, United States Code, Sections 1956(a)(1)(B)(i) and 2.

## Count 15
### (Money Laundering)
### 18 U.S.C. § 1957

The Grand Jury further charges:

26.    Paragraphs 1 through 17 are incorporated by reference and re-alleged as though fully set forth herein.

### Purchase of 2010 Bugatti Veyron

27.    In August 2013, Defendants JACOB ORTELL KINGSTON and ISAIAH ELDEN KINGSTON used proceeds of the Mail Fraud Scheme to purchase a 2010 Bugatti Veyron as follows:

a.      On or about March 27, 2013, Defendant JACOB ORTELL KINGSTON caused funds representing fraud proceeds, that is, a U.S. Treasury check in the amount of $20,283,659, to be deposited into Washakie account #4874 at the Bank of Utah;

b.      On or about March 27, 2013, Defendant JACOB ORTELL

17

KINGSTON caused funds representing fraud proceeds, that is, a U.S. Treasury check in the amount of $4,406,041, to be deposited into Washakie account #4874;

        c.      On or about April 8, 2013, Defendant JACOB ORTELL KINGSTON caused funds representing fraud proceeds, that is, a U.S. Treasury check in the amount of $8,859,520, to be deposited into Washakie account #4874;

        d.      On or about April 15, 2013, $10 million was transferred from Washakie account #4874 to United Fuel Supply account #3850 at the Bank of Utah;

        e.      On or about April 15, 2013,  Defendant ISAIAH ELDEN KINGSTON caused the transfer of $10 million from United Fuel Supply account #3850 to Merrill Lynch account #4805;

        f.      On or about July 23, 2013, $9,651,443 was transferred from Merrill Lynch account #4805 to United Fuel Supply account #3850;

        g.      On or about July 25, 2013, $280,509 was transferred from Merrill Lynch account #4805 to United Fuel Supply account #3850;

        h.      On or about July 29, 2013, Defendant ISAIAH ELDEN KINGSTON caused $100,000 to be wire transferred from United Fuel Supply account #3850 to Car Company A; and

        i.      On or about August 5, 2013, Defendant ISAIAH ELDEN KINGSTON caused $1,720,000 to be wire transferred from United Fuel Supply account #3850 to Car Company A.

**Statutory Allegations**

28.    On or about August 5, 2013, in the Central Division of the District of Utah and elsewhere,

**JACOB ORTELL KINGSTON and
ISAIAH ELDEN KINGSTON,**

defendants herein, did knowingly engage, and did aid, abet, counsel, command, induce, procure, and cause the engaging in a monetary transaction by, through, or to a financial institution, affecting interstate commerce, in criminally derived property of a value greater than $10,000, such transaction involving the wire transfer of $1,720,000 from United Fuel Supply account #3850 at the Bank of Utah to Car Company A, in connection with the purchase of a 2010 Bugatti Veyron automobile, such property having been derived from a specified unlawful activity, that is, the proceeds of the Mail Fraud Scheme, in violation of Title 18, United States Code, Section 1341.

All in violation of Title 18, United States Code, Sections 1957 and 2.

## NOTICE OF INTENT TO SEEK FORFEITURE

Pursuant to 21 U.S.C. § 982(a)(1), upon conviction of any offense in violation of 18 U.S.C. §§ 1956 and 1957, Defendants JACOB ORTELL KINGSTON, ISAIAH ELDEN KINGSTON, and LEV ASLAN DERMEN, a/k/a Levon Termendzhyan, shall forfeit to the United States of America any property, real or personal, involved in such violations, and any property traceable to such property. The property to be forfeited includes, but is not limited to, the following:

1.   Real property located at 2072 East Creek Road, Sandy, Utah 84093;

19

2. 2010 Bugatti Veyron with a Vehicle Identification Number ("VIN") VF9SC2C23AM795205;

3. All money or other property that was the subject of each transaction, transportation, transmission, or transfer in violation of 18 U.S.C. §§ 1956 and 1957, including the following:

    a. The outstanding balance of the loan owed by Borrower X to SBK Holdings USA, Inc.;

    b. Any and all interest payments made or owed by Borrower X;

    c. Any and all principal payments made or owed by Borrower X;

4. All commissions, fees, and other property constituting proceeds obtained by the defendant as a result of those violations;

5. All property used in any manner or part to commit or to facilitate the commission of those violations; and

6. A MONEY JUDGMENT equal to the value of all property involved in the money laundering and not available for forfeiture for one or more of the reasons listed in 21 U.S.C. § 853(p) as a result of any act or omission of the defendant(s).

## SUBSTITUTE ASSETS

If any of the property described above, as a result of any act or omission the

defendant(s):

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a third party;

    c. has been placed beyond the jurisdiction of the court;

    d. has been substantially diminished in value; or

    e. has been commingled with other property which cannot be divided without difficulty,

the United States of America shall be entitled to forfeiture of substitute property pursuant

to 21 U.S.C. § 853(p) and 18 U.S.C. § 982(b).

A TRUE BILL:

_____
FOREPERSON OF THE GRAND JURY

APPROVED:

JOHN W. HUBER
United States Attorney

LESLIE A. GOEMAAT
Special Assistant United States Attorney